IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA C. STONER,                )
                               )
            Plaintiff,         )
                               )
            vs.                )        CIVIL NO.  3:03-cv-697 DGW
                               )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
            Defendant.         )

## ORDER

This case is before the court pursuant to Local Rule 9.1, D.S.IL, concerning the

disposition of Social Security cases in this District.  The plaintiff brought this action pursuant to

Section 205(g) of the Social Security Act, as amended (42 U.S.C. §405(g)), to obtain judicial

review of a final decision of the Commissioner of Social Security denying her claim for disability

insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI  of the

Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

On July 5, 2001, Plaintiff, Lisa C. Stoner, ("Stoner") protectively filed her DIB and SSI

application alleging a disability beginning on November 10, 1998 (Tr. 14).  Stoner complained of

back pain that radiated in her leg and foot (Tr. 89-92, 100, 272-79).  The state agency denied her

applications initially and on reconsideration (Tr. 59-62).  Stoner's  insured status for DIB expired

on September 30, 2003 (Tr. 93).  Following an administrative hearing on August 23, 2002 (Tr.

21-58), an Administrative Law Judge (ALJ) denied her DIB and SSI applications on October 31,

2002  (Tr. 11-19).  On November 9, 2002, Stoner filed a request for review of the ALJ's hearing

decision (Tr. 10).  On September 19, 2003, the ALJ's decision became the Commissioner's final

decision when the Appeals Council denied Stoner's request for review. Pursuant to 42 U.S.C. §§

405(g) and

1383(c)(3), Stoner commenced this civil action for judicial review of the Commissioner's final

decision.  That decision became final when the Appeals Council declined to review the ALJ's

findings.  It is **ORDERED**  that the Commissioner's final decision regarding Lisa C. Stoner's

applications for disability benefits and supplemental security income be **AFFIRMED**.

**JUDGEMENT IS RENDERED IN FAVOR OF THE DEFENDANT AND AGAINST THE**

**PLAINTIFF.**

## LEGAL STANDARD

To receive DIB or SSI, a claimant must be "disabled."  A disabled person is one whose

physical or mental impairments result from anatomical, physiological, or psychological

abnormalities which can be demonstrated by medically acceptable clinical and laboratory

diagnostic techniques and which prevent the person from performing previous work and any

other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§

423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), and 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be

followed in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  The

Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2)

whether the claimant has a severe impairment, (3) whether the impairment meets or equals one

listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5)

whether the claimant is capable of performing any work in the national economy.  Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000).  If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job.  Id.

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla" of proof.  The standard is satisfied by "such  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,  402 U.S. 389, 401 (1971); Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999).  In addition, the ALJ must build a bridge of logic connecting the evidence to the conclusions that support the decision.  Groves v. Apfel, 148 F.3d 809,  811 (7th Cir. 1998).  Because the Commissioner is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner.   Id.  However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion.  Sarchet v. Chater, 78 F.3d 305, 309 (7th Cir. 1996).

## STATEMENT OF THE FACTS

### I. Medical Evidence

Stoner has a history of lower back pain, beginning in November 1998 with a lifting injury at work (Tr. 211).  Robert Meriweather, M.D., a neurosurgeon, treated her  for back problems

from 1998 to 2001 (Tr. 172-94, 198-215).   Dr. Meriweather treated Stoner with conservative

measures, including medication, epidural steroid injections, and physical therapy (Tr. 155-72,

194).  She underwent lumbar fusion surgery at L5-S1 in August 2000 and February 2002 (Tr.

176, 242- 47).

In February 1999, a nerve conduction study and electromyogram (EMG) showed no

radiculopathy, although nerve root irritation was noted (Tr. 192).  In March 1999, an MRI scan

was normal, showing no disc herniation or bulging, and no spinal stenosis (Tr. 215).   On April

24, 1999, a neurological examination showed that Stoner had normal (5/5) motor strength except

for some reduction of motor strength in her right leg (Tr. 148).   Her sensory examination was

normal, except for some decreased light touch to pin prick in her foot and great toe (Tr. 148).

Her reflexes were normal and symmetrical in her upper and lower extremities (Tr. 148).  Stoner

was observed overnight at Lourdes Hospital for a headache following a myelogram a few days

earlier (Tr. 149). The myelogram showed a very mild lumbar disc bulge, which did not appear to

compromise the spinal canal or the neural foramina (Tr. 189).

In May 1999, nerve conduction studies showed no radiculopathy and were normal (Tr.

213-14).  On June 16, 1999, Stoner told Dr. Meriweather that she had some improvement in her

back symptoms (Tr. 205).  According to the doctor, Stoner had no signs of radiculopathy (Tr.

205).  Dr. Meriweather noted the subtlety of her diagnostic back findings, including

radiograph and electrophysiology studies, and recommended that surgical intervention be a last

resort (Tr. 205).  Stoner told the doctor that she did not have the option at her home health aid

job to modify her work activity, but did have the opportunity to change jobs to one that was more

sedentary in nature (Tr. 205).   Dr. Meriweather recommended that she limit any prolonged sitting and standing, heavy lifting, and frequent bending and stooping (Tr. 205).

On September 17, 1999, Stoner told Dr. Meriweather that she was able to return to some work activities, but had increased pain (Tr. 205).   She began taking pain medications, and took off work until she could visit the doctor (Tr. 205).   She told Dr. Meriweather that she had back pain on her right side, which radiated down the lateral aspect of her right thigh and calf (Tr. 205). She demonstrated decreased range of back motion and tenderness over her back muscles (Tr. 205).   She had mild reflex asymmetry, mild dorsiflexor weakness, and no atrophy (Tr. 205).   In July 2000, a computed tomography (CT) scan showed Stoner had a bulging lumbar disc (Tr. 188).   In August 2000, Stoner underwent back surgery at Lourdes Medical Pavilion (Tr. 176). During the operation, Dr. Meriweather performed several lumbosacral surgical procedures, including a discectomy and foraminotomy (Tr. 176-77).

On January 8, 2001, an MRI scan showed post-operative changes at the L5-S1 level, but no recurrent disc herniation or residual disc herniation (Tr. 174).   In May 2001, a nerve conduction study of the right leg was normal (Tr. 195-97).

On June 5, 2001, Dr. Meriweather stated that Stoner's EMG and nerve conduction studies were normal (Tr. 198).   Stoner had a normal gait and no atrophy (Tr. 198).   Dr. Meriweather stated that he found nothing overtly abnormal that would limit her ability to work (Tr. 198). The doctor recommended that Stoner undergo a functional capacity evaluation (Tr. 198).   On July 16, 2001, she underwent a functional capacity assessment at Physical Rehab Works by Bridget Grissom, L.P.T., C.W.C.E. (Tr. 216-41).   The physical therapist who administered the

testing noted that Stoner had a variable effort and showed signs of symptom magnification, and therefore, she would be a difficult candidate to rehabilitate (Tr. 216-17).   Ms. Grissom also felt that further physical therapy was not warranted (Tr. 217).   During her evaluation, Stoner was able to lift up to ten pounds and carry up to 20 pounds (Tr. 218).   Ms. Grissom stated that she could be placed in a sedentary job if her employer could accommodate periodic changes in position from sitting, to standing, to walking (Tr. 217).

In January 2002, an MRI scan of Stoner's lumbar spine showed that she had disc degeneration, but no nerve root compression or herniation (Tr. 271).   On February 8, 2002, Stoner was admitted to St. Francis Medical Center and spent three days there to undergo lumbar fusion surgery at L5-S1 (Tr. 242-43).   Kee Park, M.D., a neurosurgeon, performed an interbody fusion of the lumbosacral spine (Tr. 242, 245-47).   Four and a half months after surgery, on June 20, 2002, Dr. Park recommended that Stoner return to light duty work, such as sedentary office work, which involved lifting no more than five pounds (Tr. 259).

## II. Evidence of Vocational Factors and Hearing Testimony

Stoner was thirty-six years old at the time of the ALJ's decision (Tr. 24).   She testified that she completed her education through the eighth grade (Tr. 25).   She has past relevant work experience as a waitress, convenience store clerk, grocery store clerk, housekeeper in a nursing home, nurse's aide, seamstress and receptionist (Tr. 26-28, 50-51, 113).

Stoner testified at her hearing that she had back pain despite her two surgeries (Tr. 33). She took pain medication for her condition, including Neurontin, Darvocet, Ultram, and Percocet (Tr. 29-31, 46). She did not take her pain medications all on the same day, but varied them

depending on the level of her symptoms (Tr. 46-47).   The Percocet was prescribed right after her surgery (Tr. 46-47).   She also took Ambien, a sleep aid (Tr. 31).   Stoner complained that her medications made her drowsy (Tr. 32, 41).   She wore a back brace (Tr. 32).   She claimed that she could stand for only five or ten minutes at a time and could sit for only five or ten minutes at a time (Tr. 35).   She claimed that she was unable to bend (Tr. 35).   She was receiving Workers' Compensation benefits (Tr. 48).

Richard Beck, Ph.D., a vocational expert who specialized in rehabilitation at Southern Illinois University, testified at Stoner's hearing (Tr. 49-57).   According to Dr. Beck, Stoner's past job as a receptionist was semi-skilled work that required sedentary exertion (Tr. 52).   He testified that she performed it for a long enough period for it to be vocationally relevant (Tr. 52). He further testified that her receptionist job was performed in a small office and would allow ample opportunity to get up and move around while performing her job duties (Tr. 53-54).   Dr. Beck testified that as normally performed in the economy, a receptionist job would involve sitting at a desk and receiving calls, so it would not be considered a sit/stand job (Tr. 54). However, he testified  that approximately 20% of receptionist jobs did allow alternating between sitting and standing positions as needed, representing about 6,000 jobs in the regional economy (Tr. 54). In response to a hypothetical question that included Dr. Meriweather's limitations against any prolonged sitting or standing, heavy lifting, or frequent bending or stooping (Tr. 53, cf. Tr. 205), Dr. Beck testified that Stoner's receptionist job would accommodate those restrictions (Tr. 53).   Dr. Beck testified that the Dictionary of Occupational Titles was consistent with his testimony (Tr. 57).

## THE ALJ'S DECISION

The ALJ evaluated Stoner's applications through Step 4 of the sequential analysis and concluded that she was not under a disability as defined in the Social Security Act.[1]  The ALJ determined under step one  that Stoner  met nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was therefore insured for benefits through the September 30, 2003, because she had not engaged in substantial gainful activity since her alleged onset of disability (Tr. 18).

The ALJ also determined under step 2 that Stoner's impairment was "severe" based upon the requirements of Regulations 20 CFR §§ 404.1520(b) and 416.920(b)[2] (Id.).  Further, the ALJ determined under step 3, that Stoner's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Id.). Under step 4 of the analysis the ALJ also determined that Stoner retained the ability to lift and carry 10  pounds frequently and 20  pounds occasionally; sit at least six hours per eight hour day, and stand/walk six hours per eight hour day, with a sit/stand option at the claimant's discretion.

 The ALJ further found that Stoner's residual functional capacity allowed a significant range of sedentary semiskilled work (Tr. 19).  Additionally, the ALJ found that Stoner's medically  determinable back pain status post lumbar fusions at L5S1 does  not prevent her from

---

[1] Because the ALJ found that Stoner could perform her past relevant work he did not proceed to step five of the inquiry.

[2] Effective September 25, 2003, the Social Security Administration revised and reorganized the regulations 20 C.F.R. §§ 404.1520, 416.920. 68 Fed. Reg. 51153, 51161-62, 51164-65 (2003).  These changes do not reflect a substantive change in the sequential evaluation process and, for simplicity, the Court will cite the regulations that were in effect at the time of the ALJ's decision.

performing her past relevant work (Id.).   Further, the ALJ  did not find Stoner's allegations

regarding her limitations totally credible.  (Id.)   Based upon these finding  the ALJ determined

that Stoner was not under a "disability" as the defined in the Social Security Act, at any time

through the date of the decision. (20 CFR §§ 404.1520(e) and 416.920(e)) (Id.).

## ANALYSIS

## I.  The ALJ Did Not Err in Concluding Stoner's Treating Physicians Opined That She Could Perform Sedentary Work.

During the sequential analysis, the ALJ determined the claimant's residual functional

capacity (RFC). 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Campbell v. Shalala,

988 F.2d 741, 744 (7th Cir. 1993).   Residual functional capacity is a measure of what an

individual can do despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a),

416.945(a).  The determination of a claimant's RFC is a legal decision rather than a medical one.

20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); Diaz v. Chater, 55 F.3d 300, 306, n. 2 (7th Cir.

1995).  Here, the ALJ found that Stoner could perform a limited range of semi-skilled, sedentary

exertion work that allowed alternating between sitting and standing positions (Tr. 16). The Social

Security regulations define sedentary exertion work:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

In making his residual functional capacity finding, the ALJ reasonably relied on the

medical opinions of Stoner's treating neurosurgeons, Dr. Meriweather and Dr. Park (Tr. 205), as

well as the opinion of her physical therapist, Bridget Grissom, L.P.T., C.W.C.E. (Tr. 217).  The

ALJ fully accommodated the findings and opinions of these physicians and physical therapist in his residual functional capacity finding (Tr. 16).

For example, Dr. Meriweather, who performed Stoner's back surgery in August 2000, stated in June 2001 that he found nothing overtly abnormal that would limit her ability to work (Tr. 198). Furthermore, in June 1999, the doctor recommended that Stoner work at a job that was sedentary in nature, and did not involve prolonged sitting and standing, heavy lifting, or frequent bending or stooping (Tr. 205). Similarly, Dr. Park, who performed Stoner's back surgery in February 2002, recommended approximately four months after surgery that she return to "light duty sedentary/office work" (Tr. 259). The physical therapist, Ms. Grissom, also believed Stoner could perform sedentary work that accommodated periodic changes between sitting, standing, and walking positions (Tr. 217). Ms. Grissom, who evaluated Stoner's physical abilities during a functional capacity evaluation ordered by Dr. Meriweather (Tr. 216), stated that she was able to lift ten pounds and carry up to twenty pounds (Tr. 218). These medical source opinions provided substantial support for the ALJ's decision.

Likewise, the objective medical test findings from the treating and examining physicians supported the ALJ's findings that Stoner had adequate ability to sit, stand, walk, and lift despite her history of back impairments. The EMG and nerve conduction studies showed no signs of radiculopathy (Tr. 192, 195-98, 205, 213-14). A CT scan showed a mildly bulging lumbar disc (Tr. 188-89), but MRI scans showed no disc herniation or bulging, and no spinal stenosis (Tr. 174, 215, 271). Her neurological examinations were either normal or mildly abnormal (Tr. 148, 199, 205), she had a normal gait (Tr. 198-99), and she showed no signs of atrophy (Tr. 198, 205). These normal or nearly normal objective medical findings are consistent with the ALJ's decision

that Stoner was not disabled by her back impairment.

Stoner contends that the ALJ should have found her disabled, because shortly after her February 2002 surgery, Dr. Park said she was limited to lifting five pounds (Tr. 259). Plaintiff's brief at 5. The record, however, does not support Stoner's contention that she was limited to such an extent throughout the period she claimed to be disabled. Indeed, her treating physician, Dr. Meriweather, stated that he found nothing overtly abnormal that would limit her ability to work (Tr. 198). Dr. Meriweather said Stoner should avoid "heavy lifting" but otherwise did not limit her ability to lift lesser amounts (Tr. 205). Likewise, the physical therapist who evaluated Stoner's condition for Dr. Meriweather stated that Stoner was able to lift up ten pounds and carry up to twenty pounds (Tr. 218, 223, 228). Stoner's physical examinations showed no muscle atrophy and little or no weakness that would limit her ability to lift ten pounds (Tr. 148, 198, 205).

In making his findings, the ALJ considered the record as a whole, including all relevant medical and non-medical evidence. Diaz, 55 F.3d at 306, n.2. The ALJ need not accept only physicians' opinions, but rather looks at the entire record in formulating his residual functional capacity finding. Id. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). A claimant is not entitled to benefits simply because her doctor said she is unable to work. Id. In the instant case, the ALJ reasonably found Stoner could perform sedentary work, because the record as a whole supported this conclusion.

Stoner argues that the ALJ should have given more credit to her back pain complaints. Plaintiff's brief at 6-7. Although the record confirms that Stoner had a serious medical condition

that could account for her pain complaints, the ALJ reasonably found that the record as a whole did not support her allegation of a disabling degree of pain.  In particular, the ALJ noted that Dr. Meriweather, who treated Stoner's back pain since 1998, did not find any overtly abnormal medical findings that would limit her ability to work (Tr. 198).  This is supported by his physical examination findings, including a normal gait, no atrophy, normal strength, and normal or nearly normal neurological functioning (Tr. 148, 198-99, 205).  Furthermore, the physical therapist noted that Stoner demonstrated a variable effort and showed signs of symptom magnification, and that her movement patterns did not correlate with her pain description (Tr. 216-17).   See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (agency considers information from physicians about claimant's pain complaints and any symptom-related limitations the physicians report); 20 C.F.R.§§ 404.1529(c)(2), 416.929(c)(2) (objective evidence, such as evidence of sensory deficit or motor disruption, is a "useful indicator" of whether pain is disabling). Furthermore, the ALJ noted that neither Stoner's physicians nor the evaluating physical therapist said that she was totally unable to work (Tr. 198, 205, 217, 259).  Thus, contrary to her contention (Plaintiff's brief at 6-9), the ALJ did consider and discuss a variety of factors in assessing her credibility (Tr. 17).

## II. Substantial Evidence Supports the ALJ's Finding That Stoner Retained The Capacity To Perform Her Past Relevant Work As A Receptionist.

After the ALJ determines the claimant's residual functional capacity, he then compares the claimant's residual functional capacity with the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(e), 404.1546, 404.1560(b), 416.920(e), 416.946, 416.960(b); see also Social Security Ruling (SSR) 82-62, at 158 (Cum. Ed. 1982) (comparison of abilities with requirements

of past work); Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).  If the claimant's past job did not require activities in excess of her residual functional capacity, the claimant will be found not disabled. 20 C.F.R. §§ 404.1520(e), 404.1560(b), 404.1561, 416.920(e), 416.960(b), 416.961.  Further, the claimant bears the burden of establishing that she is unable to return to her past relevant work. Arbogast v. Bowen, 860 F.2d 1400, 1403 (7th Cir. 1988). The claimant must show not only that she cannot perform her past relevant work as she previously performed it, but also that she cannot perform it as the job is generally performed in the national economy. Anderson v.Bowen, 868 F.2d 921, 925 n.11 (7th Cir. 1989).

In the instant case, the ALJ found that Stoner's limitations did not preclude her from performing her past relevant work as a receptionist (Tr. 18-19).   The ALJ relied on the testimony of a vocational expert, Dr. Beck, who testified that her  receptionist job accommodated an ability to perform semi-skilled, sedentary work that allowed alternating between sitting and standing positions (Tr. 53-54). See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); Walker v. Secretary of Health & Human Services, 884 F.2d 241, 245 (6th Cir. 1989) (vocational expert testimony used at step four).  Thus, substantial evidence shows that Stoner retained the capacity to perform her past job as a receptionist.  For the above-mentioned reasons, the ALJ's decision was supported by substantial evidence, and it should be affirmed. 42 U.S.C. §§ 405(g) and 1383(c)(3).

Stoner argues that the ALJ's hypothetical question to the vocational expert was based on a "long outdated" opinion from Dr. Meriweather, and therefore did not reflect Stoner's limitations adequately.   Plaintiff's brief at 10.  Her contention lacks merit.  Dr. Meriweather's opinion dates from June 1999, well after Stoner's alleged onset of disability in November 1998,

and therefore, fits squarely within the time period that she claims to be disabled (Tr. 205). Furthermore, Dr. Meriweather's opinion is consistent with the doctor's later June 2001 opinion, after her August 2000 surgery, that Stoner had "nothing overtly abnormal that would limit Stoner's ability to work" (Tr. 198). Furthermore, his opinion is consistent with a physical capacities evaluation in July 2001, that Stoner remained capable of sedentary work that allowed a sit-stand option (Tr. 217). His opinion is consistent with the objective clinical findings, which showed a normal gait, normal strength, and no atrophy (Tr. 148, 198-99, 205). As discussed earlier, Dr. Park's five-pound lifting limitation was made at around the time of her February 2002 surgery, and was not consistent with the rest of the objective evidence and physician opinions showing greater lifting ability (Tr. 148, 198-99, 205, 218). Thus, the ALJ had a valid basis for relying on the opinion of treating neurosurgeon Dr. Meriweather in formulating his hypothetical restrictions to the vocational expert.

## CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's final decision that Plaintiff, Lisa C. Stoner, could perform substantial gainful activity and, therefore, was not entitled to disability insurance benefits or supplemental security income is **AFFIRMED**.

**JUDGEMENT IS RENDERED IN FAVOR OF THE DEFENDANT AND AGAINST THE PLAINTIFF.**

**SUBMITTED:  September 7, 2005 .**


 s/Donald G. Wilkerson

**DONALD G. WILKERSON**

**UNITED STATES MAGISTRATE JUDGE**